UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAUDENCIO VIVAR REYES,<br><br>                    Petitioner,<br><br>            vs.<br><br>JOHN MARSHALL, Warden,<br><br>                    Respondent. | Civil No.  07cv1187-J (RBB)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DENYING PETITION FOR WRIT OF HABEAS CORPUS [DOC. NO. 1] AND ORDER DENYING EVIDENTIARY HEARING** |

**I.    INTRODUCTION**

Gaudencio Vivar Reyes (hereinafter "Reyes" or "Petitioner"), a state prisoner proceeding pro se, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging the August 9, 2005, decision of the Board of Parol Hearings (hereinafter "Board") finding him unsuitable for parole.  (Pet. 6-9(a).)  Reyes alleges that the failure to release him on parole now that his minimum parole eligibility date has passed violates his Fifth, Sixth, and Fourteenth Amendment rights to due process and equal protection.  (Id.)  He claims the decision resulted in (1) the deprivation of a state-created liberty interest in release on parole and (2) the breach of his plea agreement.  (Id.)

1    The Respondent, Warden Marshall, has filed an Answer [doc. no.
2  4].  Respondent contends that (1) assuming Reyes has a state-
3  created liberty interest in parole, he received all the process he
4  was due in connection with his parole hearing; (2) this Court must
5  defer to the finding of the state appellate court that "some
6  evidence" supports the Board's decision; and (3) the appellate
7  court's adjudication of Petitioner's parole hearing claims is
8  neither contrary to, nor involved an unreasonable application of,
9  clearly established federal law.  (Mem. P. & A. Supp. Answer 7-13.)
10 Warden Marshall also asserts that Petitioner has failed to state a
11 prima facie case for relief with respect to his plea bargain
12 claims.  (Id. at 13-15.)

13   Reyes has filed a traverse he titled Petitioner's Reply to
14 Answer [doc. no. 9].  He argues that he has a federally protected
15 liberty interest in parole, and his right to due process was
16 violated because the Board's finding of unsuitability is based on
17 factors which, other than the unchanging facts of his commitment
18 offense, have no evidentiary support.  (Reply 6; Mem. P. & A. Supp.
19 Reply 5.)  With respect to his plea bargain claims, Petitioner
20 argues that his plea agreement has been breached; he was
21 fraudulently induced into pleading guilty; he has stated a prima
22 facie case for relief and is therefore entitled to an evidentiary
23 hearing on these claims; and because the State destroyed all
24 evidence related to his plea bargain, the burden should be on
25 Respondent to refute his characterization of its terms.  (Reply 8-
26 9; Mem. P. & A. Supp. Reply 9.)  Reyes also argues that prisoners
27 similarly situated to him have been released on parole after
28 ///

07cv1187

serving their minimum terms, thereby demonstrating an equal protection violation.  (Pet. 6; Mem. P. & A. Supp. Reply 8-9.)

At the Court's request, Respondent filed a supplemental brief, along with a supplemental notice of lodgment, addressing whether Petitioner's plea bargain claims are barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1) [doc. no. 18]. Respondent argues that Petitioner became aware of the factual predicate of his plea bargain claims in 2001, when he had not been released after serving sixteen years of his sixteen years-to-life prison term, but Reyes did not file the present action until 2007, well outside the limitations period.  (Resp't's Suppl. Brief 2-3.) Reyes filed a reply to Respondent's supplemental brief [doc. no. 19].  He presents additional arguments on the merits of his claims but does not address the statute of limitations, other than to say that he has not seen the supplemental documents lodged by Respondent and cannot be sure of their accuracy or authenticity. (Pet'r's Suppl. Reply 1-8.)

Based upon the documents and evidence presented in this case, and for the reasons set forth below, the Court finds that Petitioner's plea bargain claims are barred by the statute of limitations, and habeas relief is not available on his parole hearing claims.  The Court therefore recommends the Petition be **DENIED**.

## II.   <u>FACTUAL BACKGROUND</u>

Petitioner was charged by information filed in the San Diego County Superior Court with two counts of murder in violation of Cal. Penal Code section 187.  (Lodgment No. 1, <u>People v. Reyes</u>, Case No. CRN 9479 (Cal. Super. Ct. Sept. 24, 1984) (information

1).)  The information also alleged that Reyes used a deadly weapon,
a machete, during the commission of the murders.  (<u>Id.</u>)  Petitioner
pleaded guilty to one count of second degree murder.  (Lodgment No.
1, <u>People v. Reyes</u>, Case No. CRN 9479 (Cal. Super. Ct. May 17,
1985) (abstract of judgment 1).)  On May 17, 1985, Reyes was
sentenced to fifteen years-to-life in state prison for the murder
count and received a one-year consecutive term for the deadly
weapon use allegation, for a total term of sixteen years-to-life.
(<u>Id.</u> at 1.)  Petitioner's minimum parole eligibility date was
January 22, 1994.  (Lodgment No. 2, Subsequent Parole Consideration
Hr'g Tr. 1, Aug. 9, 2005.)

      At the beginning of the August 9, 2005, parole suitability
hearing, the presiding commissioner read a summary of Reyes's
commitment offense into the record, which was taken from the
probation officer's report.  (<u>Id.</u> at 8-9.)  According to the
summary, on December 31, 1983, Reyes and several others, including
his brother, gathered in an avocado grove and consumed a large
amount of alcohol.  (<u>Id.</u> at 8.)  Sometime between 10:00 p.m. and
11:00 p.m. that evening, a confrontation occurred between
Petitioner and Amadeo Morales Martinez.  (<u>Id.</u>)

      During this confrontation, Petitioner hit Martinez repeatedly
with a machete while the unarmed victim attempted to defend
himself.  (<u>Id.</u>)  Reyes continued to strike Martinez even after the
victim was incapacitated.  (<u>Id.</u>)  After Martinez collapsed,
Petitioner's brother joined in the assault and stabbed Martinez in
the neck and chest with a knife.  (<u>Id.</u> at 9.)

      After Martinez appeared to be dead, Reyes chased another man
in the group, Fidel Ortega, who was also unarmed, although Reyes

07cv1187

claimed Ortega was trying to hit him with a stick.  (<u>Id.</u>)
Petitioner hit Ortega with the machete numerous times and "returned
to the camp covered with blood, carrying a bloody machete."  (<u>Id.</u>)
Numerous blows to Ortega's head caused brain hemorrhaging and,
ultimately, his death.  (<u>Id.</u>)  Petitioner agreed that the factual
summary given was accurate.  (<u>Id.</u>)

At the conclusion of the hearing, the Board found Reyes
unsuitable for parole, based primarily on the "cruel and callous
manner" of his commitment offense and the inexplicable and trivial
motive for the crime.  (<u>Id.</u> at 45-46.)  The Board considered a
letter from the District Attorney of San Diego County, outlining
her opposition to Reyes's parole.  (<u>Id.</u> at 17-20.)  She explains
that Reyes and his brother were "enraged" by a statement by the
sixteen-year-old victim that Petitioner and his brother did not
stand a chance in a fight with Martinez.  (<u>Id.</u> at 19.)  During the
course of the parole hearing, Deputy Commissioner Smith expressed a
concern about the likelihood of Petitioner committing another
violent crime upon release.  (<u>Id.</u> at 28-29.)  Although Reyes's
psychological evaluation placed his likelihood of future violence
in the high end of the low range, Smith noted that Dr. Giles, who
completed a psychological evaluation of Reyes, found that
Petitioner did not understand the pivotal role alcohol played in
his commitment offense.  (<u>Id.</u> at 26-29.)  The deputy commissioner
believed additional anger management programming was necessary.
(<u>Id.</u> at 28.)  At the conclusion of the hearing, the Board
recommended Petitioner stay discipline free and obtain a general
equivalency diploma.  (<u>Id.</u> at 48.)
///

1  III.  **PROCEDURAL BACKGROUND**

2      Reyes filed a petition for a writ of habeas corpus in the San

3  Diego County Superior Court on November 4, 2005, challenging the

4  finding of unsuitability for parole.  (Lodgment No. 3, Reyes v.

5  Marshall, Case No. HCN830 (Cal. Super. Ct. filed Nov. 4, 2005)

6  (petition for writ of habeas corpus).)  On January 12, 2006, the

7  superior court denied the petition.  (Lodgment No. 4, In re Reyes,

8  Case No. HCN0830, order den. pet. at 3 (Cal. Super. Ct. Jan. 12,

9  2006).)  Reyes filed a habeas petition in the California Court of

10 Appeal.  (Lodgment No. 5, Reyes v. Marshall, Case No. D048134 (Cal.

11 Ct. App. filed Mar. 3, 2006) (petition for writ of habeas corpus).)

12 The court of appeal denied the petition on May 19, 2006.  (Lodgment

13 No. 6, In re Reyes, Case No. D048134, slip op. at 4 (Cal. Ct. App.

14 May 19, 2006).)  On August 25, 2006, Reyes filed a petition for a

15 writ of habeas corpus in the Supreme Court of California.

16 (Lodgment No. 7, Reyes v. Marshall, Case No. S146099 (Cal. filed

17 Aug. 25, 2006) (petition for Writ of habeas corpus).)  The petition

18 was summarily denied on March 14, 2007.  (Lodgment No. 8, In re

19 Reyes, Case No. S146099 (Cal. Mar. 14, 2007) (docket).)

20     On June 29, 2007, Reyes filed his Petition for Writ of Habeas

21 Corpus in this Court [doc. no. 1].  Respondent filed an Answer and

22 a Memorandum of Points and Authorities in Support on September 7,

23 2007 [doc. no. 4].  Petitioner then submitted a Reply with a

24 Memorandum of Points and Authorities in Support on October 17, 2007

25 [doc. no. 9].

26     The Court ordered further briefing on the issue of whether

27 Petitioner's plea bargain claims were barred by the statute of

28 limitations and directed Respondent to lodge a copy of the

transcript from Reyes's parole hearing held on May 25, 2003 [doc. no. 10].  Respondent filed a supplemental brief on September 26, 2008, and lodged the requested parole hearing transcript along with a chronological inmate history for Reyes [doc. no. 18].  Petitioner filed a reply on October 8, 2008 [doc. no. 19].

**IV.   DISCUSSION**

The Petition sets forth five claims alleging due process and equal protection violations which the Court will analyze in two categories.  Claims three and four allege a federal due process violation in connection to the deprivation of Petitioner's state-created liberty interest in parole release.  (Pet. 8-9.)  Claims one, two, and five allege due process and equal protection violations in connection to the breach of, and the fraudulent inducement into, Reyes's plea agreement.  (Pet. 6-7, 9(a).)

**A.   Scope of Review**

Title 28, United States Code, § 2254(a), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in <u>violation of the Constitution or laws or treaties of the United States.</u>

28 U.S.C.A. § 2254(a) (West 2006) (emphasis added).  As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was <u>adjudicated on the merits</u> in State court proceedings unless the adjudication of the claim –

1
2
3
                    (1) resulted in a decision that was
                contrary to, or involved an unreasonable
                application of, clearly established Federal
                law, as determined by the Supreme Court of the
                United States; or

4
5
6
                    (2) resulted in a decision that was based
                on an unreasonable determination of the facts
                in light of the evidence presented in the State
                court proceeding.

7   28 U.S.C.A. § 2254(d)(1)-(2) (West 2006) (emphasis added).

8       A state court's decision may be "contrary to" clearly

9   established Supreme Court precedent (1) "if the state court applies

10  a rule that contradicts the governing law set forth in [the

11  Court's] cases[]" or (2) "if the state court confronts a set of

12  facts that are materially indistinguishable from a decision of

13  [the] Court and nevertheless arrives at a result different from

14  [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06

15  (2000).  A state court decision may involve an "unreasonable

16  application" of clearly established federal law, "if the state

17  court identifies the correct governing legal rule from this Court's

18  cases but unreasonably applies it to the facts of the particular

19  state prisoner's case." Id. at 407.  An unreasonable application

20  may also be found, "if the state court either unreasonably extends

21  a legal principle from [Supreme Court] precedent to a new context

22  where it should not apply or unreasonably refuses to extend that

23  principle to a new context where it should apply." Id.

24      "[A] federal habeas court may not issue the writ simply

25  because the court concludes in its independent judgment that the

26  relevant state-court decision applied clearly established federal

27  law erroneously or incorrectly. . . .  Rather, that application

28  must be objectively unreasonable." Lockyer v. Andrade, 538 U.S.

63, 75-76 (2003) (internal quotation marks and citations omitted).
Clearly established federal law "refers to the holdings, as opposed
to the dicta, of [the United States Supreme] Court's decisions
. . . ." <u>Williams</u>, 529 U.S. at 412.

Habeas relief is also available if the state court's
adjudication of a claim "resulted in a decision that was based on
an unreasonable determination of the facts in light of the evidence
presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(2)
(West 2006). In order to satisfy this provision, a federal habeas
petitioner must demonstrate that the factual findings upon which
the state court's adjudication of his claims rest are objectively
unreasonable. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

**B. Due Process in Denial of Parole**

Reyes alleges in claims three and four that his federal due
process rights have been violated by the deprivation of his state-
created liberty interest in release on parole. (Pet. 8-9.) In
claim three, he argues that the factors used by the Board to
support the finding of unsuitability for parole were "arbitrary,
capricious and whimsical because [they are] totally lacking
evidentiary support." (Pet. 8.) He also contends that the
appellate court's findings regarding his parole plans are
unsupported by the record, and there is no post-conviction evidence
supporting the finding that he would pose an unreasonable threat to
public safety if released. (<u>Id.</u>) In claim four, Reyes contends
that the Board's continued reliance on the static facts of his
commitment offense to find him unsuitable for parole violates due
process. (Pet. at 9.)
///

1   Reyes presented these claims to the California Supreme Court

2   in a habeas petition.  (Lodgment No. 7, <u>Reyes v. Marshall</u>, Case No.

3   S146099 (petition for writ of habeas corpus).)   That petition was

4   summarily denied on March 14, 2007, with a single citation to

5   <u>People v. Duvall</u>, 9 Cal. 4th 464, 474, 886 P.2d 1252, 1258, 37 Cal.

6   Rptr. 2d 259, 265 (1995) (setting forth the initial burden assigned

7   to state prisoners for adequately pleading grounds for habeas

8   relief).  (Lodgment No. 8, <u>In re Reyes</u>, Case No. S146099 (docket).)

9   Reyes had asserted these claims in his state appellate court habeas

10  petition.  (Lodgment No. 5, <u>Reyes v. Marshall</u>, Case No. D048134

11  (petition for writ of habeas corpus).)   The appellate court denied

12  these claims on the merits in a written order.  (Lodgment No. 6, <u>In

13  re Reyes</u>, Case No. D048134, slip op. at 1-3.)

14  In <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 804 (1991), the Court

15  adopted a presumption which gives no effect to unexplained state

16  court orders but "looks through" them to the last reasoned state

17  court decision.   The last reasoned decision of the state courts

18  with respect to Reyes's parole hearing claims is the appellate

19  court opinion denying the claims on their merits.   The Court will

20  therefore look through the silent denial by the state supreme court

21  to the appellate court opinion.   After setting forth the applicable

22  legal standards, and noting the facts surrounding the crimes, the

23  appellate court stated:

24      The facts of Reyes's crimes are some evidence to
        support the Board's finding that the killing was cruel
25      and callous because he used a machete to kill two men.
        He repeatedly stuck [sic] the first victim even after the
26      victim was injured.   Then Reyes chased down the second
        victim and repeatedly hit him on the head until he died.
27      According to witnesses, the victims were unarmed.   The
        Board also appropriately considered Reyes's psychological
28      report in denying him a parole date.   The report stated
        if released, Reyes's risk of violent crime is on the high

1    end of the low range.  It is also unclear what Reyes's
2    plans will be once he is deported back to Mexico and that
     seeking a GED would be to his benefit.

3  (Lodgment No. 6, <u>In re Reyes</u>, Case No. D048134, slip op. at 3.)

4       Clearly established federal law provides that Reyes may

5  demonstrate a procedural due process violation by showing that

6  (1) a federally protected life, liberty or property interest exists

7  "which has been interfered with by the State"; and (2) "the

8  procedures attendant upon that deprivation were constitutionally

9  [in]sufficient." <u>Ky. Dep't of Corr. v. Thompson</u>, 490 U.S. 454, 460

10 (1989).  The Supreme Court has recognized a federally protected

11 liberty interest in the expectancy of release on parole arising

12 from state parole statutes.  See <u>Greenholtz v. Inmates of Neb.</u>

13 <u>Penal & Corr. Complex</u>, 442 U.S. 1, 12 (1979) ("[T]he expectancy of

14 release provided in [the Nebraska parole] statute is entitled to

15 some measure of constitutional protection.  However, we emphasize

16 that this statute has unique structure and language and thus

17 whether any other state statute provides a protectible entitlement

18 must be decided on a case-by-case basis."); <u>see also</u> <u>Board of</u>

19 <u>Pardons v. Allen</u>, 482 U.S. 369, 377-78 (1987) (holding that

20 mandatory language in Montana parole statute, like the Nebraska

21 statute, created a presumption that parole will be granted, thereby

22 giving rise to a protected liberty interest).

23      The Ninth Circuit has applied <u>Greenholtz</u> and <u>Allen</u> to find

24 that mandatory language in the California parole statute "gives

25 rise to a cognizable liberty interest in release on parole[,]"

26 <u>McQuillion v. Duncan</u>, 306 F.3d 895, 902 (9th Cir. 2002), which is

27 "created, not upon the grant of a parole date, but upon the

28 incarceration of the inmate." <u>Biggs v. Terhune</u>, 334 F.3d 910, 915

(9th Cir. 2003).  The liberty interest in parole created by Cal.
Penal Code section 3041(b) is clearly established within the
meaning of AEDPA.  <u>Sass v. Cal. Bd. of Prison Terms</u>, 461 F.3d 1123,
1127-28 (9th Cir. 2006).

Respondent assumes, without conceding, that Reyes has a
federally protected liberty interest in parole release.  (Mem. P.
& A. Supp. Answer 7.)  The warden argues, however, citing
<u>Greenholtz</u>, that clearly established federal law provides that an
inmate is entitled only to an opportunity to be heard and a
statement of reasons denying parole.  (<u>Id.</u>)  Because Reyes had
advance notice of his parole hearing, was allowed to submit
materials for the Board's consideration, was represented by counsel
at the hearing, and was given an opportunity to be heard both
orally and in writing, Respondent contends Petitioner was provided
more process than he was due.  (<u>Id.</u> at 7-8.)

Admittedly, the <u>Greenholtz</u> Court held that when an inmate is
afforded "an opportunity to be heard" at a state parole hearing,
and is informed of the reasons he "falls short of qualifying for
parole," the inmate has been given due process.  <u>Greenholtz</u>, 442
U.S. at 16.  In <u>Superintendent of the Mass. Corr. Inst. v. Hill</u>,
472 U.S. 445 (1985), however, the Supreme Court held that the
deprivation of a state-created liberty interest in good-time prison
custody credits comports with the minimum requirements of due
process when the findings of the prison disciplinary board are
supported by some evidence in the record.  <u>Id.</u> at 455-56.  The
Ninth Circuit has held that the "some evidence" standard announced
in <u>Hill</u> is clearly established federal law applicable to the
accumulation of good time credits and a parole denial, "because

'both directly affect the duration of the prison term.'"  <u>Sass</u>, 461 F.3d at 1128 (<u>quoting</u> <u>Jancsek v. Or. Bd. of Parole</u>, 833 F.2d 1389, 1390 (9th Cir. 1987)).

Respondent contends that the holding in <u>Sass</u>, applying the <u>Hill</u> standard to parole hearings, has been called into question by the intervening Supreme Court opinion in <u>Carey v. Musladin</u>, 549 U.S. 70 (2006). (Mem. P. & A. Supp. Answer 9-10.)  The warden argues that the policy reasons behind the <u>Hill</u> Court's application of the "some evidence" standard in the prison disciplinary hearing context do not apply in the parole context; consequently, AEDPA precludes its application here. (<u>Id.</u>)  Respondent acknowledges that <u>Irons v. Carey</u>, 505 F.3d 846, 850-51 (9th Cir. 2007), which was decided after <u>Musladin</u> was announced, reiterated that the <u>Hill</u> standard is clearly established federal law for AEDPA purposes applicable to parole hearings. (Mem. P. & A. Supp. Answer at 10.)  The warden argues, however, that the precedential value of <u>Irons</u> is questionable because it did not discuss <u>Musladin</u> and because a petition for rehearing en banc was pending in that case. (<u>Id.</u> at 10 n.4.)

After Respondent filed his Answer, the Ninth Circuit denied rehearing in <u>Irons</u>.  <u>Irons v. Carey</u>, 506 F.3d 951 (9th Cir. Nov. 6, 2007).  In addition, Petitioner cites to a decision of a panel of the Ninth Circuit which cited <u>Musladin</u>, applied the <u>Hill</u> standard, and was decided after rehearing in <u>Irons</u> was denied. (<u>See</u> Pet'r's Supp. Reply at 4-7 (citing <u>Hayward v. Marshall</u>, 512 F.3d 536, 542-38 (9th Cir. 2008), <u>rehearing en banc granted</u>, 527 F.3d 797 (9th Cir. May 16, 2008)).)  But that decision is of limited precedential value because rehearing en banc has been granted in that case.

-13-

1   (See id.)  The Court notes, however, that the petitioners in Biggs,

2   Sass, and Irons, unlike Reyes, were all denied parole "prior to the

3   expiration of their minimum terms."  Irons, 505 F.3d at 853.  The

4   Court need not determine the exact extent of federal due process

5   protections afforded in parole hearings to California prisoners

6   like Reyes who have served past their minimum terms.  Even under

7   the holdings of Irons and Sass, that the "some evidence" standard

8   of Hill represents clearly established federal law, Reyes's due

9   process rights were not violated by the decision to deny him

10   parole.

11       The Sass court, interpreting Hill, held that due process is

12   satisfied if "some evidence" exists in the record to support the

13   parole board's decision.  Sass, 461 F.3d at 1128.  "[T]he relevant

14   question is whether there is any evidence in the record that could

15   support the conclusion reached by the disciplinary board."  Id.

16   (quoting Hill, 472 U.S. at 455-56).  The Ninth Circuit has also

17   held that "the evidence underlying the board's decision must have

18   some indicia of reliability."  Biggs, 334 F.3d at 915 (quoting

19   Jancsek, 833 F.2d at 1390).

20       Reyes first contends that he was not accorded due process

21   because the findings of the Board and the appellate court lack

22   evidentiary support.  Here, the Board found that Reyes's crimes

23   were "especially cruel and callous," and said that was an

24   "understatement." (Lodgment No. 2, Subsequent Parole Consideration

25   Hr'g Tr. 46.)  The appellate court held that the facts of

26   Petitioner's crime "are some evidence to support the Board's

27   finding that the killing was cruel and callous." (Lodgment No. 6,

28   In re Reyes, Case No. D048134, slip op. at 3.)  The appellate court

1  also concluded that the Board had correctly relied on the

2  psychological evaluation which placed Reyes on the high end of low

3  risk of violent crime.  (<u>Id.</u>)  His parole plans were unclear, and

4  Reyes would benefit from further education.  (<u>Id.</u>)

5      The Court finds "some evidence" in the record to support the

6  findings of both the Board and the appellate court that Petitioner

7  would pose an unreasonable risk to the public safety if released,

8  and this evidence has sufficient indicia of reliability.  First and

9  foremost is Petitioner's commitment offense.  As the Board noted,

10  the crime was especially cruel and callous.  Petitioner admitted to

11  hacking two unarmed men to death with a machete.  The Board found

12  that the suffering of the victims was unimaginable, and Reyes

13  showed no compassion for either victim.  (Lodgment No. 2,

14  Subsequent Parole Consideration Hr'g Tr. 46.)  The reason for the

15  murders was "inexplicable and trivial," in that Reyes murdered the

16  men because one of them was verbally abusive.  (<u>Id.</u>)  The appellate

17  court correctly noted that the facts of Reyes's crime satisfy the

18  criteria under California law for a finding of unsuitability for

19  parole.  <u>See</u> Cal. Code Regs., tit. 15, § 2402(c) (listing factors

20  tending to show unsuitability, including that the crime showed "an

21  exceptionally callous disregard for human suffering," and the

22  motive "is inexplicable or very trivial in relation to the

23  offense[]")  There is "some evidence" in the record to support the

24  findings by the Board and the appellate court regarding the callous

25  nature of the crime and its trivial motive

26  Because Petitioner admitted these facts were true, they have

27  sufficient indicia of reliability.

28  ///

-15-

Reyes argues that the facts of his commitment offense alone are insufficient to establish that his release poses an unreasonable risk to the public's safety.  (Pet. 8.)  He contends that he has been a model prisoner during the his more than twenty years of incarceration, has no criminal record other than his commitment offense, and has done everything the Board has asked him to do.  (Pet. 8-9; Mem. P. & A. Supp. Reply 7-9.)  Reyes maintains that the Board's continued reliance on his commitment offense has transformed his sentence from life with the possibility of parole to life without the possibility of parole.  (Pet. 8-9.)

In Biggs, the court held that the "continued reliance in the future on an unchanging factor, [such as] the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."  Biggs, 334 F.3d at 917.  Respondent not only challenges the language in Biggs that the California prison system has rehabilitative goals, but argues that the quoted language in Biggs is dicta and is therefore not clearly established federal law.  (Mem. P. & A. Supp. Answer at 12 & n.5.)  The warden relies on an unpublished memorandum decision of the Ninth Circuit holding there is no clearly established federal law which limits the number of times a California prisoner may be denied parole based on the brutality and viciousness of his commitment offense. (Id. at 12-13 (citing Culverson v. Davison, 237 Fed.Appx. 174 (9th Cir. 2007) (unpublished memorandum), cert. denied, 128 S.Ct. 2475 (2008).)

The Court is not required to determine whether Biggs provides additional due process protections, however, because Petitioner is

incorrect that the Board here relied only on the unchanging factors of his commitment offense.  Rather, as the appellate court noted, the Board also relied on a psychological report to find a risk of future violence.  The report indicates that Petitioner's risk of violence in a free community is at the high end of the low range. (Lodgment No. 2, Subsequent Parole Consideration Hr'g Tr. 29.)  In addition, although the psychological report indicates that Reyes had completed an anger management program, Deputy Commissioner Smith expressed concern that the report did not address whether dealing with anger management should be a continuing process for Reyes, rather than a single program.  (_Id._ at 28.)

Smith observed that Reyes refused to recognize the role that alcohol had in his commitment offense.  (_Id._ at 27-28.)  Although the psychological report, dated May 19, 2005, indicated that Reyes attended self-help programs relating to alcohol abuse, he was still unable to identify the role alcohol played in the offense.  (_Id._ at 26, 28.)  Reyes admitted to the doctor who prepared the report that he last drank alcohol in prison in 1998; he had manufactured alcohol while in prison but was never caught.  (_Id._ at 27.) Petitioner admits that he was heavily intoxicated when he committed the crimes.  (Mem. P. & A. Supp. Reply 2.)  Yet, during the parole hearing, after admitting he had consumed seven beers and some tequila at the time of the murders, when asked if he felt drunk at the time, Reyes answered:  "Not a bit."  (Lodgment No. 2, Subsequent Parole Consideration Hr'g Tr. 12-13.)  When asked repeatedly to explain why he attacked the victims, Reyes did not acknowledge the role alcohol played, but he indicated there was no

///

motive or reason for the attacks, other than being offended by what the victim had said.  (Id. at 9-11.)

Reyes argues that the Board's finding that he had gained no insight into his alcohol use was not supported by the record. (Pet. 8.)  On the contrary, Deputy Commissioner Smith stated that Reyes had acquired insight into his alcohol use, but he had failed to translate that insight to his behavior during the murders. (Lodgment No. 2, Subsequent Parole Consideration Hr'g Tr. 27.) Reyes contends his record shows that he knows he is better off without alcohol, and he has had no serious mishaps involving alcohol during his incarceration.  (Pet. 8.)  But he admitted drinking and making alcohol in 1998 while in prison, but he was never caught.  (Lodgment No. 2, Subsequent Parole Consideration Hr'g Tr. 27.)  In any case, his lack of appreciation for the role alcohol played in the crimes, and a possible return to alcohol-induced violence, was not identified by Commissioner Sawyer when he outlined the reasons for denying Reyes's request for parole. Nevertheless, the reliance on the psychological report by the Board and the appellate court to show a danger of future violence is supported by "some evidence" in the record which has sufficient indicia of reliability.

Petitioner next argues that the appellate court's finding that he has vague parole plans is unsupported by the record.  (Pet. 8.) The appellate court stated:  "It is also unclear what Reyes's plans will be once he is deported back to Mexico . . . ."  (Lodgment No. 6, In re Reyes, Case No. D048134, slip op. at 3.)  Reyes argues that the Board made a detailed inquiry into his parole plans, and he provided information regarding where he would live and what type

1  of jobs he would seek, including continuing his ministerial

2  training.  (Pet. 8.)

3       In a statement Reyes made to the Board during the hearing, he

4  identified three goals he wished to achieve upon his release.  The

5  first goal was to continue his religious studies, but he did not

6  indicate the extent to which he had made efforts to find a place

7  for continued studies.  (Lodgment No. 2, Subsequent Parole

8  Consideration Hr'g Tr. 43-44.)  Second, he intended to teach

9  "country people how to work the land and make their products"

10 during the day, and "at nighttime I am going to share with them my

11 own experiences . . . ."  (<u>Id.</u> at 44.)  His third goal was to learn

12 how to work with leather while in prison and set up a factory

13 making leather goods with the help of his family in Mexico.  (<u>Id.</u>)

14 Reyes also submitted several letters from individuals in Mexico

15 indicating that he would have support in finding jobs there,

16 including in a church, and he would have help continuing his

17 rehabilitation if necessary.  (<u>Id.</u> at 16-17.)

18      Even were the Court to agree with Petitioner that it was

19 objectively unreasonable for the appellate court to find that his

20 parole plans are unclear, there is "some evidence" in the record to

21 support the ultimate finding that Petitioner poses an unreasonable

22 risk of danger to society if released.  This evidence consists of

23 the psychological report indicating that Reyes poses a risk of

24 future violence, and the trivial motive for the brutal and callous

25 murder of the two victims.  These two items alone are sufficient

26 evidence to support the Board's decision to deny Reyes's request

27 for parole.  Although Deputy Commissioner Smith's concerns

28 regarding the need for ongoing anger management programming, and

1  Petitioner's failure to come to terms with the connection between
2  the crime and his alcohol use do not appear in Commissioner
3  Sawyer's decision, they reinforce the Board's decision.

4      The Court finds there is sufficient evidence in the record to
5  support the Board's determination that Petitioner's release
6  unreasonably endangers public safety, and therefore, no due process
7  violation occurred.  Irons, 505 F.3d at 851; Sass, 461 F.3d at
8  1128; Biggs, 334 F.3d at 915; Jancsek, 833 F.2d at 1390.
9  Accordingly, the Court finds that the appellate court's
10 adjudication of Petitioner's due process claim, on the basis that
11 the parole board's unsuitability determination was supported by
12 "some evidence," is neither contrary to, nor an unreasonable
13 application of, clearly established federal law, and is not based
14 on an unreasonable determination of the facts in light of the
15 evidence presented in the state court proceedings.  Reyes is
16 therefore not entitled to habeas relief as to claims three and four
17 in the Petition.

18     **C.   Breach of Plea Agreement**

19     In claims one, two, and five, Reyes alleges due process and
20 equal protection violations in connection with the breach of, and
21 the fraudulent inducement into, his plea agreement.  (Pet. 6-7,
22 9(a).)  Specifically, he argues that his plea agreement provided
23 that he was to be released on parole after serving his minimum
24 term, provided he was a model prisoner, which he has been.  (Id. at
25 6.)  Petitioner contends that the failure to release him, and the
26 continuing opposition to his release by the Attorney General,
27 constitutes a breach of that agreement.  (Id. at 7.)  Reyes argues
28 that because the State has deliberately destroyed all evidence of

his plea agreement, Respondent should bear the burden of refuting
his version of the terms of the agreement.  (Id.)  He contends that
the Board will continue to rely on the static facts of his
commitment offense to deny him parole, thereby transforming his
bargained-for sentence from life with the possibility of parole to
life without the possibility of parole, and he was therefore
fraudulently induced into pleading guilty by the false promise of a
sentence which contemplates parole.  (Id. at 9(a).)  Although Reyes
mentions equal protection in the Petition (see Pet. 6), he
identifies the basis for the claim only in his Reply, where he
argues that an equal protection violation has arisen from the fact
that prisoners similarly situated have been released on parole
after serving their minimum terms.  (Mem. P. & A. Supp. Reply 8-9.)

Respondent maintains that Petitioner became aware of the
factual predicate of these claims in 2001, when he had not been
released after sixteen years, but he did not file the present
action until 2007, well outside the one-year limitations period.
(Resp't's Suppl. Brief 2-3.)  Reyes replies that he does not have a
copy of the documents which Respondent has lodged in support of the
statute of limitations argument, but does not dispute that the
facts derived from them are accurate.  (Pet'r's Suppl. Brief 3-4.)

The Ninth Circuit has assumed, without deciding, that the one-
year statute of limitations codified at 28 U.S.C. § 2244(d)(1)
applies to state prisoners challenging parole board decisions in
federal court.  Redd v. McGrath, 343 F.3d 1077, 1080 n.4 (9th Cir.
2003).  The limitations period begins to run on the latest of—

>           (A) the date on which the judgment became
> final by the conclusion of direct review or the
> expiration of the time for seeking such review;

07cv1187

1
2
3
   (B) the date on which the impediment to filing
an application created by State action in violation
of the Constitution or laws of the United States is
removed, if the applicant was prevented from filing
by such State action;

4
5
6
   (C) the date on which the constitutional right
asserted was initially recognized by the Supreme
Court, if the right has been newly recognized by the
Supreme Court and made retroactively applicable to
cases on collateral review; or

7
8
9
   (D) the date on which the factual
predicate of the claim or claims presented
could have been discovered through the exercise
of due diligence.

10 28 U.S.C.A. § 2244(d)(1)(A)-(D) (West 2006).

11   Section 2244(d)(1)(A) does not apply here.  <u>See Redd</u>, 343 F.2d

12 at 1081-82.  In addition, Petitioner does not contend that a state-

13 created impediment to his filing of this action ever existed, or

14 that he is relying on a newly-created constitutional right

15 recognized by the Supreme Court.  The Court will therefore apply

16 § 2244(d)(1)(D) in this action.

17   In a declaration attached to his state habeas petition, Reyes

18 indicated that he was informed by his attorney in 1985 when he

19 pleaded guilty that he could be expected to be released on parole

20 after serving eight years, on his minimum parole eligibility date,

21 as long as he did not commit another crime while in prison.

22 (Lodgment No. 3, <u>Reyes v. Marshall</u>, Case No. HCN830 (Reyes decl. at

23 ¶¶ 3-4).)  Petitioner contends that the breach of his plea

24 agreement occurred between this fifth parole suitability hearing

25 held on March 25, 2003, and his sixth hearing held on August 9,

26 2005.  (Pet. 6.)  Thus, whereas in state court he contended the

27 breach occurred after serving eight years of his sentence, he

28 ///

contends here that the breach did not occur until after he had served eighteen years.

Reyes entered the state prison system on May 29, 1985, and he was received at Folsom State Prison on June 19, 1985. (Lodgment No. 10, Inmate Chronological History 1.) His minimum parole eligibility date was January 22, 1994. (Lodgment No. 2, Subsequent Parole Consideration Hr'g Tr. 1.) Reyes had his initial parole hearing on May 7, 1993, and was found unsuitable for parole at subsequent hearings held on April 26, 1995, June 19, 1997, March 21, 2001, March 25, 2003, and August 9, 2005. (Lodgment No. 10, Inmate Chronological History 1-3.) Thus, Reyes has been aware of the factual predicate of his plea bargain claims at least since the hearing on April 26, 1995, when he was found unsuitable for parole. That hearing was held after his minimum parole eligibility date of January 22, 1994. Reyes did not file the current federal Petition alleging a breach of his plea agreement until June 6, 2007, when he states that he handed the Petition to the prison authorities for mailing to the Court.[1] (See Pet. 11.)

Thus, after becoming aware of the factual predicate of his plea agreement claims, Reyes allowed over twelve years to elapse before bringing the claims in federal court. Even accepting Petitioner's assertion that he became aware of the factual predicate of his claims following his fifth (fourth subsequent) parole hearing (see Pet. 6), which was held on March 25, 2003, his claims are still untimely. That decision became final on June 23,

---

[1] Petitioner is entitled to the benefit of the "mailbox rule" which provides for constructive filing of court documents as of the date they are submitted to the prison authorities for mailing to the court. Anthony v. Cambra, 236 F.3d 568, 574-75 (9th Cir. 2000).

2003, and was made more than four years before Reyes initiated
these proceedings.  (Lodgment No. 11, Subsequent Parole
Consideration Hr'g Tr. 68, Mar. 25, 2003.)  Unless he is entitled
to statutory or equitable tolling of the limitations period,
Reyes's claims are clearly untimely.

### 1. Statutory Tolling

The statute of limitations is statutorily tolled while a
"properly filed" state habeas corpus petition is "pending" in the
state court.  28 U.S.C. § 2244(d)(2).  Statutory tolling is not
available if the first state habeas petition is filed after the
limitations period has expired.  Jiminez v. Rice, 276 F.3d 478, 482
(9th Cir. 2001).  Reyes filed his first state habeas petition
presenting his plea bargain claims in the state superior court on
November 4, 2005.  (Lodgment No. 3, Reyes v. Marshall, Case No.
HCN830 (petition for writ of habeas corpus at 1).)  Even accepting
Petitioner's assertion that he became aware of the factual
predicate of his claim on June 23, 2003, his filing of the state
habeas petition on November 4, 2005, nearly two and one-half years
later, could not statutorily toll the already expired one-year
statute of limitations.  Rice, 276 F.3d at 482.

### 2. Equitable Tolling

AEDPA's one-year statute of limitations is also subject to
equitable tolling.  Calderon v. U.S. Dist. Court (Beeler), 128 F.3d
1283, 1288 (9th Cir. 1997), overruled on other grounds by Calderon
v. U.S. Dist. Court (Kelly), 163 F.3d 530, 540 (9th Cir. 1998).
The Ninth Circuit in Beeler noted that "[e]quitable tolling will
not be available in most cases, as extensions of time will only be
granted if 'extraordinary circumstances' beyond a prisoner's

control make it impossible to file a petition on time." Id. at
1288-89 (quoting Alvarez-Machain v. United States, 107 F.3d 696,
701 (9th Cir. 1996)).  The burden is on Petitioner to show that the
"extraordinary circumstances" he has identified were the proximate
cause of his untimeliness, rather than merely a lack of diligence
on his part.  Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003);
Stillman v. LaMarque, 319 F.3d 1199, 1202-03 (9th Cir. 2003).
Equitable tolling "is unavailable in most cases." Miles v. Prunty,
187 F.3d 1104, 1107 (9th Cir. 1999).  "[T]he threshold necessary to
trigger equitable tolling (under AEDPA) is very high, lest the
exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063,
1066 (9th Cir. 2002).

Reyes has made no attempt to demonstrate that his lengthy
delay in presenting his plea bargain claims to the state or federal
courts was the result of anything other than a lack of diligence on
his part.  Petitioner was able to pursue the claims alleging denial
of due process arising from his most recent parole hearing through
the state and federal courts supports a finding of lack of
diligence.  See Gaston v. Palmer, 417 F.3d 1030, 1034 (9th Cir.
2005) (holding that equitable tolling was unavailable where
prisoner was not prevented from meeting other filing deadlines);
Spitsyn, 345 F.3d at 799 (stating that Petitioner must show that
the "extraordinary circumstances" he has identified were the
proximate cause of his untimeliness, rather than negligence in
general or a lack of diligence).

Reyes alleges that the Board intends to deny him parole for
the rest of his life by relying on the unchanging facts of his
commitment offense.  (See Pet. 9.)  He contends that he was

therefore fraudulently induced into pleading guilty by the promise
of a real chance of parole.  (Mem. P. & A. Supp. Reply 11-12.)  To
the extent Petitioner came to this realization as a result of the
March 25, 2003 hearing, or after any preceding parole hearing, his
claim is barred by the statute of limitations.  To the extent Reyes
alleges he came to that realization after his most recent parole
hearing and the claim is not barred by the statute of limitations,
or to the extent this is considered as a basis for equitable
tolling of the plea agreement claims, it is without merit.  As set
forth above, the Board considered factors other than the commitment
offense to find Reyes unsuitable for release, including the
psychological assessment of his risk of future violence, and Deputy
Commissioner Smith was concerned about Reyes's understanding and
dealing with issues involving anger management and alcohol abuse.
The Court finds, therefore, that this aspect of claim five, to the
extent it is not barred by the statute of limitations, is without
merit for the reasons discussed above with respect to claims three
and four.

Accordingly, claims one, two, and five, alleging a breach of
Petitioner's plea bargain, are barred by the one-year statute of
limitations.  To the extent the fraudulent inducement aspect of
claim five is not barred by the statute of limitations, the Court
finds it to be without merit.

**D.   Equal Protection**

In claim one, Reyes alleges, in an entirely conclusory
fashion, that his equal protection rights have been violated by the
breach of his plea agreement.  (Pet. 6.)  Conclusory allegations
///

1 without factual support "do not warrant habeas relief."  <u>James v.</u>

2 <u>Borg</u>, 24 F.3d 20, 26 (9th Cir. 1994).

3      In his Reply, however, Reyes argues that an equal protection

4 violation has arisen from the fact that similarly situated

5 prisoners have been released on parole after serving their minimum

6 terms.  (Mem. P. & A. Supp. Reply 8-9.)  He lists a number of state

7 court cases and argues that the facts of those cases support his

8 claim.  (<u>Id.</u>)  If Petitioner is presenting a new claim in the

9 Reply, which was not presented in the Petition itself, the Court

10 has the discretion to refuse to consider it.  <u>See</u> <u>Cacoperdo v.</u>

11 <u>Demosthenes</u>, 37 F.3d 504, 507 (9th Cir. 1994) (stating that court

12 may ignore issue raised for first time in traverse when scope of

13 traverse has been specifically limited by court order and

14 petitioner ignores order to file a separate pleading indicating

15 intent to raise claim); <u>but</u> <u>see</u> <u>Boardman v. Estelle</u>, 957 F.2d 1523,

16 1525 (9th Cir. 1992) (holding that district court erred in failing

17 to address issue raised in traverse).  Because the Court has a duty

18 to liberally construe pro se pleadings, <u>Zichko v. Idaho</u>, 247 F.3d

19 1015, 1020-21 (9th Cir. 2001), the equal protection claim

20 Petitioner framed in the Reply will be considered.

21      Although Reyes did not provide the state supreme court with

22 the case citations he provides here in support of his equal

23 protection claim, he did generally argue in the state habeas

24 petition that his federal equal protection rights were violated by

25 the failure to release him after he had served his minimum term.

26 (Lodgment No. 7, <u>Reyes v. Marshall</u>, Case No. S146099 (petition for

27 writ of habeas corpus at 3).)  That petition was summarily denied

28 on March 14, 2007, with a single citation to <u>People v. Duvall</u>, 9

Cal. 4th 464, 474, 886 P.2d 1252, 1258, 37 Cal. Rptr. 2d 259, 265
(1995) (setting forth the initial burden assigned to state
prisoners for adequately pleading grounds for habeas relief).
(Lodgment No. 8, In re Reyes, Case No. S146099 (docket).)
Respondent argues that Reyes has not stated a prima facie case as
to his plea bargain claims (grounds two and five), but the warden
does not argue that the citation to Duvall by the state supreme
court is applicable to this aspect of Reyes's equal protection
claim (ground one).  (Mem. P. & A. Supp. Answer 13-15.)  Respondent
has not carried the initial burden of "demonstrating that the bar
is applicable" to this claim.  Bennett v. Mueller, 322 F.3d 573,
586 (9th Cir. 2003).

Reyes did not present an equal protection claim in the habeas
petitions filed in the state superior and appellate courts.
(Lodgment No. 3, Reyes v. Marshall, Case No. HCN830 (petition for
writ of habeas corpus); Lodgment No. 5, Reyes v. Marshall, Case No.
D048134 (petition for writ of habeas corpus).)  The Court must
therefore conduct an independent review of the record to determine
whether the silent denial of this claim by the state supreme court
is contrary to, or involved an unreasonable application of, clearly
established federal law.  Pirtle v. Morgan, 313 F.3d 1160, 1167
(9th Cir. 2002) (holding that when the state court reaches the
merits of a claim but provides no reasoning to support its
conclusion, "although we independently review the record, we still
defer to the state court's ultimate decision[]")  To the extent the
state supreme Court's citation to Duvall indicates that it did not
reach the merits of the claim due to a procedural bar, the Court
must conduct a de novo review of the claim.  Id.  Under either an

07cv1187

independent or de novo standard of review, the claim does not provide a basis for federal habeas relief.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr. Inc., 473 U.S. 432, 439 (1985)(quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)).  The Court does not inquire into whether one state treats its prisoners the same as another state, but whether California treats all similarly situated prisoners the same.  See Addington v. Texas, 441 U.S. 418, 431 (1979) ("The essence of federalism is that states must be free to develop a variety of solutions to problems and not be forced into a common, uniform mold.")  The Ninth Circuit has consistently held that prisoners are not a suspect class. Glauner v. Miller, 184 F.3d 1053, 1054 (9th Cir. 1999); Webber v. Crabtree, 158 F.3d 460, 461 (9th Cir. 1998); Mayner v. Callahan, 873 F.2d 1300, 1302 (9th Cir. 1989).  Consequently, even if Petitioner was treated differently than other similarly situated prisoners in California, any disparate treatment is justified by showing a rational basis for the disparity.  City of Cleburne, 473 U.S. at 440; San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 55 (1973) ("The constitutional standard under the Equal Protection Clause is whether the challenged state action rationally furthers a legitimate state purpose or interest.").

Reyes identifies eight opinions of various California courts in which he contends the petitioners were convicted of second degree murder and released on parole after serving their minimum

terms; he argues that he is similarly situated to those prisoners.
(Mem. P. & A. Supp. Reply 8-9.)  Reyes is not similarly situated to
any of the petitioners in those cases.  Furthermore, there is a
rational basis for any disparate treatment between those
petitioners and Reyes, because the cases cited each have factors
distinguishing them from Reyes's case.  See In re Lee, 143 Cal.
App. 4th 1400, 1404-05, 49 Cal. Rptr. 3d 931, 933-34 (2006)
(describing eighty-one year-old petitioner with numerous severely
debilitating medical conditions and very low risk of violence); In
re Elkins, 144 Cal. App. 4th 475, 480-81, 50 Cal. Rptr. 3d 503,
505-06 (2006) (affirming Board of Parole Hearings where petitioner
convicted of first degree murder for killing his high school
classmate during a robbery, who petitioner blamed for ruining his
life by causing his drug addiction); In re Scott, 133 Cal. App. 4th
573, 579-80; 34 Cal. Rptr. 3d 905, 908 (2005) (granting habeas
corpus relief to petitioner, who surrendered to police, and was
subsequently convicted of killing the drug dealer his wife was
having an affair with and who had threatened petitioner); In re
Lawrence, 59 Cal. Rptr. 3d 537, 539-40 (2007) (reversing governor's
refusal to follow recommendation to parole female petitioner who
killed wife of her lover with firearm and potato peeler, and served
twenty-two years on a seven years-to-life sentence imposed after
she turned down a plea offer of two years), review granted, 168
P.3d 869 (Cal. Sept. 19, 2007); In re Barker, 151 Cal. App. 4th
346, 351-52, 59 Cal. Rptr. 3d 746, 748-49 (2007) (ordering a new
parole suitability hearing for petitioner convicted of one count of
first degree murder and two counts of second degree murder in the
killing of his friend's parents and grandfather, when Board of

-30-

Parole Hearings found him unsuitable after he had served twenty-nine years and obtained his GED); In re Smith, 114 Cal. App. 4th 343, 350-51, 7 Cal. Rptr. 3d 655, 660-61 (2003) (remanding for a new parole determination by governor where petitioner killed his wife after she told him she had been unfaithful and was leaving him, and then went to a church and asked people to pray for him and to call the police); In re Ramirez, 94 Cal. App. 4th 549, 553-54, 114 Cal. Rptr. 2d 381 (2001) (requiring another parole suitability hearing for petitioner convicted of second degree murder when fellow robber and occupant of the car petitioner was driving was thrown from car and killed while eluding police), disapproved of by, In re Dannenberg, 34 Cal. 4th 1061, 1100, 104 P.3d 783, 806, 23 Cal. Rptr. 3d 417, 444 (2005).

Thus, to the extent a liberal construction of the Petition reveals that Petitioner is presenting an equal protection claim which is not barred by the statute of limitations, the Court finds, based on an independent review of the record, that the silent denial of that claim by the state supreme court was neither contrary to, nor involved an unreasonable application of, clearly established federal law.  To the extent a de novo review of the record is required as to Reyes's equal protection claim, the Court finds habeas relief to be unavailable because the claim is without merit.

**E.   Evidentiary Hearing**

Finally, Petitioner requests an evidentiary hearing as to his claims.  (Reply 9; Mem. P. &. A. Supp. Reply 12-13.)  Based on the finding in this Report that Petitioner is not entitled to habeas relief as to any claim presented, Petitioner's request for an

1  evidentiary hearing is denied.  <u>See</u> <u>Bashor v. Risley</u>, 730 F.2d

2  1228, 1233 (9th Cir. 1984) (holding that an evidentiary hearing is

3  not required on issues which can be resolved on the basis of the

4  state court record).

5  **V.    CONCLUSION AND RECOMMENDATION**

6       The Court submits this Report and Recommendation to United

7  States District Judge Napoleon A. Jones under 28 U.S.C. § 636(b)(1)

8  and Local Civil Rule HC.2 of the United States District Court for

9  the Southern District of California.  For the reasons outlined

10  above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order:

11  (1) approving and adopting this Report and Recommendation, and

12  (2) directing that Judgment be entered denying the Petition.

13       **IT IS ORDERED** that no later than **January 9, 2009**, any party to

14  this action may file written objections with the Court and serve a

15  copy on all parties.  The document should be captioned "Objections

16  to Report and Recommendation."

17       **IT IS FURTHER ORDERED** that any reply to the objections shall

18  be filed with the Court and served on all parties no later than

19  **January 26, 2009**.  The parties are advised that failure to file

20  objections within the specified time may waive the right to raise

21  those objections on appeal of the Court's order.  <u>See</u> <u>Turner v.</u>

22  <u>Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951

23  F.2d 1153, 1156 (9th Cir. 1991).

24  **DATED:** December 5, 2008

25

26                                        Hon. Ruben B. Brooks
                                         **UNITED STATES MAGISTRATE JUDGE**

27

28

                              -32-                        07cv1187