

FILED

2010 JAN 11 PM 4:08

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAUDENCIO VIVAR REYES,<br><br>    Petitioner,<br><br>v.<br><br>JOHN MARSHALL, Warden,<br><br>    Respondent. | Civil No. 07cv1187 W (RBB)<br><br>**ORDER:**<br>**(1) ADOPTING THE REPORT AND RECOMMENDATION;**<br><br>**(2) DENYING PETITION FOR WRIT OF HABEAS CORPUS; and**<br><br>**(3) DENYING PETITIONER'S REQUEST FOR EVIDENTIARY HEARING** |

Presently before this Court is Magistrate Judge Ruben B. Brooks's Report & Recommendation (R&R) recommending that the Court deny Petitioner Gaudencio Vivar Reyes's ("Petitioner" or "Reyes") petition for writ of habeas corpus as well as Petitioner's request for an evidentiary hearing. [Doc. No. 20.] This Court has considered Reyes's Petition, Respondent John Marshall's ("Respondent" or "Marshall") response, Petitioner's traverse, all supporting documentation, and Petitioner's objections to the R&R. Having considered these documents, this Court **ADOPTS** the R&R, **DENIES** Reyes's Petition for writ of habeas corpus, and **DENIES** Reyes's request for an evidentiary hearing.

### *Factual Background*

Petitioner was charged by information filed in San Diego County Superior Court with two counts of murder in violation of Cal. Penal Code Section 187. (Lodgment No. 1.) The informa-

tion also alleged that Reyes used a deadly weapon, a machete, during the commission of the murders. (*Id.*) Petitioner pleaded guilty to one count of second-degree murder. (*Id.*; *People v. Reyes,* Case No. CRN 9479 (Cal. Super. Ct. May 17, 1985)). On May 17, 1985, Reyes was sentenced to fifteen years-to-life in state prison for the murder count and received a one-year consecutive term for the deadly weapon use allegation, for a total of sixteen years-to-life. (Lodgment No. 1, at 1.) Petitioner's minimum parole eligibility date was January 22, 1994. (Lodgment No. 2.)

At the beginning of the August 9, 2005, parole suitability hearing, the presiding commissioner read a summary of Reyes's commitment offense into the record, which was taken from the probation officer's report. (*Id.* at 8-9.) According to the summary, on December 31, 1983, Reyes, his brother, and several others were gathered in an avocado grove and consumed a large amount of alcohol. (*Id.* at 8.) Sometime between 10:00 p.m. and 11:00 p.m. that evening, a confrontation occurred between Petitioner and Amadeo Morales Martinez. (*Id.*)

Reyes and his brother became "enraged" after Martinez made a statement to the effect that Reyes and his brother would not stand a chance in a fight with Martinez. (*Id.* at 19.) In the confrontation that followed, Petitioner repeatedly hit Martinez with a machete while the unarmed victim attempted to defend himself. (*Id.*) Reyes continued to strike Martinez even after the victim was incapacitated. (*Id.*) After Martinez collapsed, Petitioner's brother joined in the assault and stabbed Martinez in the neck and chest with a knife. (*Id. at 9.*)

After Martinez appeared to be dead, Reyes chased another man in the group, Fidel Ortega, who was also unarmed (although Reyes claimed Ortega was trying to hit him with a stick). (*Id.*) Reyes struck Ortega with the machete numerous times and "returned to the camp covered with blood, carrying a bloody machete." (*Id.*) The numerous blows to Ortega's head caused brain hemorrhaging and, ultimately, his death. (*Id.*) Petitioner agreed that the factual summary given was accurate. (*Id., see also* Objections at 2.)

At the conclusion of the hearing, the Board found Reyes unsuitable for parole, based primarily on the "cruel and callous manner" of his commitment offense and the trivial motive for the crime. (Lodgment No. 2, at 45-46.) The board considered a letter from the District Attorney

of San Diego County, outlining her opposition to Reyes's parole, based on the trivial provocation of the attack. (*Id.* at 17-20.)

During the course of the parole hearing, Deputy Commissioner Smith expressed a concern about the likelihood of Petitioner committing another violent crime upon his release. (*Id.* at 28-29.) Although Reyes's psychological evaluation placed his likelihood of future violence at the high end of the low range, Smith noted that Dr. Giles, who completed a psychological evaluation of Reyes, found that Petitioner did not understand the pivotal role alcohol played in his commitment offense. (*Id.* at 26-29.) The deputy commissioner believed additional anger management programming was necessary. (*Id.* at 28.)

### *Procedural History*

On November 4, 2005, Reyes filed a petition for writ of habeas corpus in the San Diego County Superior Court, challenging the finding of unsuitability for parole. (Lodgment No. 3.) On January 12, 2006, the superior court denied the petition. (Lodgment No. 4.) Reyes then filed a habeas petition in the California Court of Appeal, which was denied on May 19, 2006. (Lodgment Nos. 5, 6.) On August 25, 2006, Reyes filed a petition for writ of habeas corpus in the Supreme Court of California. (Lodgment No. 7.) The petition was summarily denied on March 14, 2007. (Lodgment No. 8.)

On June 29, 2007, Reyes filed a petition for writ of habeas corpus in this Court. [Doc. No. 1.] Respondent filed an answer on September 7, 2007. [Doc. No. 4.] Petitioner submitted a reply with a memorandum of points and authorities on October 17, 2007. [Doc. No. 9.]

The Court ordered further briefing on the issue of whether Petitioner's plea bargain claims were barred by the statute of limitations and directed Respondent to lodge a copy of the transcript from Reyes's parole hearing. [Doc. No. 10.] Respondent filed a supplemental brief and lodged the requested parole hearing transcript along with a chronological inmate history for Reyes on September 26, 2008. [Doc. No. 18.] Petitioner filed a reply on October 8, 2008. [Doc. No. 19.]

Magistrate Judge Ruben B. Brooks issued an R&R to this Court, recommending that the Petition be denied, and that Petitioner's request for an evidentiary hearing also be denied. [Doc. No. 20.] Petitioner filed objections to the R&R on March 16, 2009. [Doc. No. 25.]

## *Legal Standard*

### I. State Habeas Prisoner Standard

A federal court must grant habeas relief to a petitioner in state prison if the petitioner is in custody "in violation of the Constitution or other laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court's duty in examining a state prisoner's habeas petition is governed by 28 U.S.C. § 2254 as amended by the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA"). Pursuant to § 2254, a federal court may grant habeas corpus relief from a state-court judgment only if the adjudication was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state-court decision is "contrary to clearly established federal law" if it (1) applies a rule that contradicts the governing law set forth in Supreme Court cases, or (2) confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at the opposite result. *See Williams*, 529 U.S. at 405. Mixed questions of fact and law are reviewed under the "contrary to" and "unreasonable application" clauses in 28 U.S.C. § 2254(d)(1). *Lambert v. Blodgett*, 393 F.3d 943, 976 (9th Cir. 2004). A state court's factual findings underlying its conclusions on mixed issues are accorded a presumption of correctness. *Id.* This is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).

When the highest state court issues a decision in a case but does not articulate the rationale for its determination, such as issuing a silent denial, the silence is deemed to be consent to the lower court's decision, and the reviewing court should "look through" to the "last reasoned opinion" to determine the legal basis for the denial. *Ylst v. Nunnemaker*, 501 U.S. 797,

804 (1991). Such is the case here; the rationale will therefore be derived from the state appellate court of California.

## II. Reviewing Magistrate Judge's R&R

The duties of a district court in connection with a magistrate judge's R&R are set forth in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). A district court must "make a *de novo* determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3) (2007); *see also United States v. Raddatz*, 447 U.S. 667, 676 (1980) ("[I]n providing for a '*de novo*' determination . . . Congress intended to permit whatever reliance a district judge, in exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations.").

*Discussion*

Petitioner makes five claims alleging due process and equal protection violations which the Court will analyze in two categories. Claims three and four allege a federal due process violation in connection with the deprivation of Petitioner's state-created liberty interest in parole release. (Petition at 8-9.) Claims one, two, and five allege due process and equal protection violations in connection with the breach of, and the fraudulent inducement into, Reyes's plea agreement. (*Id.* at 6-7, 9(a).)

## I. Due Process in Denial of Parole

Petitioner alleges his federal due process rights were violated by his failure to be released on parole. (*Id.* at 8-9.) In claim three, he argues that the factors used by the Board to support the finding of unsuitability for parole were "arbitrary, capricious and whimsical because [they are] totally lacking evidentiary support." (*Id.* at 8.) Petitioner also contends that the appellate court's findings regarding his parole plans are unsupported by the record, and there is no post-conviction evidence supporting the finding that he would pose an unreasonable threat to public safety if released. (*Id.*) In claim four, Reyes contends that the Board has continually relied on the static facts of his commitment offense to find him unsuitable for parole, which is a violation of his due process rights. (*Id.* at 9.)

5

07cv1187 W (RBB)

Reyes may demonstrate a procedural due process violation by showing that (1) a federally protected life, liberty, or property interest exists "which has been interfered with by the State;" and (2) "the procedures attendant upon that deprivation were constitutionally [in]sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court has recognized a federally protected liberty interest in the expectancy of release of parole arising from state parole statutes. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979) ("[T]he expectancy of release provided in [the Nebraska parole] statute is entitled to some measure of constitutional protection. However, we emphasize that this statute has unique structure and language and thus whether any other state statute provides a protectible entitlement must be decided on a case-by-case basis."); *see also Bd. of Pardons v. Allen*, 482 U.S. 369, 377-78 (1987) (holding that mandatory language in Montana parole statute, like the Nebraska statute, created a presumption that parole will be granted, thereby giving rise to a protected liberty interest).

The Ninth Circuit has applied *Greenholtz* and *Allen* to hold that mandatory language in the California parole statute "gives rise to a cognizable liberty interest in release on parole." *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002). However, as *Greenholtz* makes clear, when an inmate is afforded "an opportunity to be heard" at a state parole hearing, and is informed of the reasons he "falls short of qualifying for parole," the inmate has been given due process. *Greenholtz*, 442 U.S. at 16; *see also Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127-28 (9th Cir. 2006).

Despite the deprivation of a state-created liberty interest through the denial of parole, the Supreme Court has held that the minimum requirements of due process are satisfied when the findings of the prison disciplinary board are supported by some evidence in the record. *Superintendent of the Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56 (1985); *see also Sass*, 461 F.3d at 1128 (holding that the "some evidence" standard announced in *Hill* applies to the accumulation of good time credits and a parole denial, "because 'both directly affect the duration of the prison term.'" (quoting *Jancsek v. Or. Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987)). Addition-

ally, "the evidence underlying the board's decision must have some indicia of reliability." *Biggs v. Terhune,* 334 F.3d 910, 915 (9th Cir. 2003).

Here, Reyes first contends that he was not accorded due process because the findings of the Board and the state appellate court lack evidentiary support. (Lodgment No. 2.) The Board found that Reyes's crimes were "especially cruel and callous," and said even that was an "understatement." (Lodgment No. 2.) The appellate court held that the facts of Petitioner's crime "are some evidence to support the Board's finding that the killing was cruel and callous," and also noted that the Board had correctly relied on the psychological evaluation which placed Reyes on the high end of low risk of violent crime. (Lodgment No. 6, at 3.)

The Court finds "some evidence" in the record to support the findings of the Board that Petitioner would pose an unreasonable risk to the public safety if released, and this evidence has sufficient indicia of reliability. First, Petitioner's commitment offence was especially cruel and callous, as Reyes admitted to hacking two men to death with a machete because one of them was verbally abusive. (Lodgment No. 2.) The state appellate court correctly noted that the facts of Reyes's crime satisfy the criteria under California law for a finding of unsuitability of parole. *See* Cal. Code Regs., tit. 15, section 2402 (c)) (listing factors tending to show unsuitability, including that the crime showed "an exceptionally callous disregard for human suffering," and the motive "is inexplicable or very trivial in relation to the offense"). There is "some evidence" in the record to support the findings by the Board and the appellate court regarding the callous nature of the crime and its trivial motive. Because Petitioner admitted these facts were true, they have sufficient indicia of reliability. (Objections at 2.)

Next, Reyes argues that the facts of his commitment offense alone are insufficient to establish that his release poses an unreasonable risk to the public's safety. (Petition at 8.) Reyes maintains that the Board's continued reliance on his commitment offense has transformed his sentence from life with the possibility of parole to life without the possibility of parole. (*Id.* at 8-9.) However, Petitioner is incorrect that the Board relied only on the unchanging factors of his commitment offense. The Board relied on a psychological report to find a risk of future violence,

as well as concerns about Reyes' understanding of the role alcohol played in his offense. These two items are sufficient to support the Board's decision to deny Reyes's request for parole.

The Court finds there is sufficient evidence in the record to support the Board's determination that Petitioner's release unreasonably endangers public safety, and therefore, no due process violation occurred. *See Sass*, 461 F.3d at 1128; *Biggs*, 334 F.3d at 915; *Jancsek*, 833 F.2d at 1390. The appellate court's adjudication of Petitioner's due process claims is neither contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The Court therefore **DENIES** relief based on these claims.

## II. Breach of Plea Agreement

In claims one, two, and five, Reyes alleges due process and equal protection violations in connection with the breach of, and fraudulent inducement into, his plea agreement. (Petition at 6-7, 9(a).) Reyes contends that his plea agreement provided that he was to be released on parole after serving his minimum term, provided he was a model prisoner, which he has been. (*Id.* at 6.) Reyes argues that because the State has deliberately destroyed all evidence of his plea agreement, Respondent should bear the burden of refuting his version of the terms of the agreement. (*Id.*)

The Ninth Circuit has assumed, without deciding, that the one-year statute of limitations for state habeas relief in 28 U.S.C. § 2244(d)(1) applies to prisoners challenging parole board decisions in federal court. *Redd v. McGrath,* 343 F.3d 1077, 1080 n.4 (9th Cir. 2003). 28 U.S.C. § 2244(d)(1)(D) states that the limitations period begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Here, Reyes allegedly signed a plea agreement which would release him upon serving his minimum term. Assuming this is true, Reyes would have known about the breach immediately following the passing of that date when he woke up in prison. Despite this alleged breach, Reyes waited six years to file his claim for relief, which simply falls outside the statute of limitations period.

Assuming, arguendo, that Reyes is correct about the terms of the plea agreement, he became aware of the factual predicate of these claims well before filing his petition. Petitioner was first eligible for parole in January 1994. (Lodgment No. 2.) Reyes was denied parole both before that date (on May 7, 1993) and after that date (April 26, 1995).

Additionally, Petitioner was sentenced to sixteen-years-to-life in jail; the date for the minimum sentence for Reyes occurred in 2001. Assuming Reyes's plea agreement stated with certainty that Reyes would be released following his minimum sentence, the latest possible date to trigger the statute of limitations would have occurred in 2001. Reyes's first state habeas petition occurred in November 2005, well beyond the one-year limitations period. (Lodgment No. 3.)

Yet, Reyes claims he did not become aware of the factual predicate of his plea bargain until some time between his fifth and sixth parole eligibility hearings. (Petition at 6.) Reyes's fifth parole hearing was held on March 25, 2003 and became final on June 23, 2003. Even if Reyes was given the benefit of the doubt, he did not file the present action until 2007, which still falls outside the one-year limitations period. Unless Petitioner is entitled to statutory or equitable tolling of the limitations period, his claims are clearly untimely.

### A. Statutory Tolling

The statute of limitations is statutorily tolled while a "properly filed" state habeas corpus petition is "pending" in the state court. 28 U.S.C. § 2244(d)(2). Statutory tolling is not available if the first state habeas petition is filed after the limitations period has expired. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001). Reyes filed his first state habeas petition presenting his plea bargain claims in the state superior court on November 4, 2005. (Lodgment No. 3.) Even accepting Petitioner's assertion that he became aware of the factual predicate of his claim on June 23, 2003, his filing of the state habeas petition nearly two and one-half years later could not statutorily toll the already expired one-year statute of limitations. *Jiminez*, 276 F.3d at 482.

### B. Equitable Tolling

AEDPA's one-year statute of limitations is also subject to equitable tolling. *Calderon v. U.S. Dist. Court*, 128 F.3d 1283, 1288 (9th Cir. 1997) (*overruled* on other grounds by *Calderon*

9

07cv1187 W (RBB)

*v. U.S. Dist. Court,* 163 F.3d 530, 540 (9th Cir. 1998)). The Ninth Circuit noted that "[e]quitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Calderon,* 128 F.3d at 1288-89 (quoting *Alvarez-Machain v. United States,* 107 F.3d 696, 701 (9th Cir. 1996)). The burden is on Petitioner to show that the "extraordinary circumstances" were the proximate cause of his untimeliness, rather than merely a lack of diligence on his part. *Spitsyn v. Moore,* 345 F.3d 1199, 1202-03 (9th Cir. 2003). Equitable tolling is "unavailable in most cases." *Miles v. Prunty,* 187 F.3d 1104, 1107 (9th Cir. 1999). "[T]he threshold necessary to trigger equitable tolling (under AEDPA) is very high, lest the exceptions swallow the rule." *Miranda v. Castro,* 292 F.3d 1063, 1066 (9th Cir. 2002).

Here, Reyes has made no attempt to demonstrate that his lengthy delay in presenting his plea bargain claims to the state or federal courts was the result of anything other than a lack of diligence on his part. Nothing in the factual record would demonstrate a barrier to Petitioner's timely filing of a state habeas petition existed, nor has Petitioner argued that any other circumstances would justify equitable tolling. As a result, Petitioner has not met the very high burden of qualifying for equitable tolling.

Because Reyes' claims related to his plea agreement are not eligible for statutory or equitable tolling, the Court **FINDS** they are barred by AEDPA's one-year statute of limitations. Therefore, the Court **DENIES** relief based on these claims.

### C. Equal Protection

In claim one, Reyes allege that his equal protection rights have been violated by the breach of his plea agreement. (Petition at 6.) However, in Petitioner's Objections to the R&R [Doc. No. 25], he moves to withdraw his equal protection claim. Petitioner states: "With respect to Petitioner's equal protection claim, Petitioner agrees with the Court's assessment of, and conclusion as to this claim. Thus, Petitioner moves to withdraw this claim." (Objections at 4.) Thus, Petitioner's request to withdraw his equal protection claim is granted, and the Court will not consider this claim.

### III. Evidentiary Hearing

Finally, Petitioner requests an evidentiary hearing as to his claims. [Doc. No. 9.] Because Petitioner is not entitled to habeas relief as to any claim presented, Petitioner's request for an evidentiary hearing is denied. *See Bashor v. Risley,* 730 F.2d 1228, 1233 (9th Cir. 1984) (holding that an evidentiary hearing is not required on issues which can be resolved on the basis of the state court record.).

**IV. Conclusion**

For the reasons above, this Court **ADOPTS** the R&R and, accordingly, **DENIES** Reyes's Petition for writ of habeas corpus in its entirety and **DENIES** the request for an evidentiary hearing.

**IT IS SO ORDERED.**

DATED: 1/11/10

HON. THOMAS J. WHELAN
United States District Judge

cc: Magistrate Judge Brooks
All Counsel of Record